IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
------------------------------------------------------  :
DOUGLAS WALDRON,                                      :  CASE NO.  1:07 CV 01916
                                                      :
                                    Petitioner,       :
                                                      :  MEMORANDUM OF OPINION AND
                        -vs-                          :  ORDER
                                                      :
EDWIN VOORHIES, Warden,                               :
                                                      :
                                    Respondent.       :
------------------------------------------------------  :
```

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On 27 June 2007, Petitioner Douglas Waldron ("Mr. Waldron" or Petitioner) filed

this timely habeas, pursuant to 28 U.S.C. § 2254, setting forth the following single

ground for relief:

> Ground for Relief No. 1: A defendant is deprived of his Sixth Amendment
> right to effective assistance of counsel when counsel fails to object to the
> admission of prejudicial, inadmissible other-acts evidence at trial.

(Doc. 1).  Respondent filed a return of writ on 4 September 2007 (Doc. 8) to which Mr.

Waldron responded in traverse on 5 November 2007 (Doc. 10).  The matter was

assigned to Magistrate Judge James S. Gallas (Doc. 4) for a Report and

Recommendation ("R&R").  Magistrate Judge Gallas submitted his R&R denying

Petitioner's writ on 6 November 2008 (Doc. 11), to which Mr. Waldron filed timely

objections. (Doc. 12).

In his R&R, Magistrate Judge Gallas recommends the Court deny Mr. Waldron's petition for relief because he failed to show an unreasonable application by the state court of clearly established federal law.  (Doc. 11, R&R, p. 5).  The R&R, first, concludes that Mr. Waldron's trial counsel could not be found "ineffective," under the test as applied in Strickland, for abstaining from objecting to the testimony of two witnesses – B.F. and K.F. – presenting "other acts" evidence when that evidence was "inextricably related to the indicted criminal acts" and, thus, within the ambit of Ohio Evid. Rule 404(B).  (Doc. 11, R&R, pp. 9, 10).  Performing an independent review of the record which "establishes that there was overwhelming evidence of guilt," Magistrate Judge Gallas, further, concluded the state court did not unreasonably apply Strickland in finding no actual prejudice in Mr. Waldron's counsel's failure to object to the other-acts testimony at trial.  (Doc. 11, R&R, pp. 10-12).  See Hicks v. Collins, 384 F.3d 204, 215 (6th Cir. 2006).  Finally, Magistrate Judge Gallas concludes that Mr. Waldron's claim, raised for the first time in his traverse, that the state appellate court made an "unreasonable determination of the facts in light of the evidence presented," see 28 U.S.C. § 2254(d)(2), becomes moot in light of the Petitioner's sole claim for review concerning the Sixth Amendment right to effective assistance of counsel.  (Doc. 11, R&R, pp. 12, 13).

In his objections to the R&R, Mr. Waldron contends the habeas writ should be granted because, in examining the Ohio Rules of Evidence, the state appellate court rendered a decision contrary to federal law.  (Doc. 12, p. 6).  The Petitioner also maintains the habeas writ should be granted because the state appellate court's analysis of the other-acts evidence given by B.F. and K.F.: (1) was an unreasonable

2

application of <u>Strickland</u> where the testimony was separate and unrelated, thereby illuminating the Petitioner's counsel's alleged deficient performance (Doc. 12, pp 6-8); and, (2) was an unreasonable application where the admitted testimony prejudiced Mr. Waldron so seriously as to deprive him of a fair trial.  (Doc. 12, pp 8-9).  Finally, in consideration of 28 U.S.C. 2254(d)(2), Mr. Waldron contends the state appellate court made an unreasonable determination of the facts in light of the evidence presented where it determined that the testimony of K.F. and B.F. exhibited a "common plan" to engage in sexual activity with young boys.  (Doc. 12, pp 9-11).

For the reasons set forth below, the Court will both affirm and reach beyond the Magistrate Judge's R&R to deny Mr. Waldron's § 2254 habeas petition.


I.	BACKGROUND

A.	State Appellate Court: Background

The Federal Magistrates Act requires a district court to conduct a <u>de novo</u> review only of those portions of the R&R to which the parties have made an objection. 28 U.S.C. § 636(b)(1).  Moreover, the factual findings of a state court are presumed to be correct.  A federal court may only diverge from a state court's factual findings if the petitioner shows by clear and convincing evidence that the findings are erroneous. 28 U.S.C. § 2254(e)(1).

The Court of Appeals, Eighth Appellate District, Cuyahoga County, Ohio delineated the facts of this case on direct appeal.  Because Mr. Waldron has not

rebutted these factual findings by clear and convincing evidence,[1] the Court presumes

they are correct and, accordingly, recites the following facts:

> {¶ 1} Douglas Waldron ("Waldron") appeals his conviction and sentence from Cuyahoga County Common Pleas Court. Waldron argues that his trial counsel rendered ineffective assistance, that the jury verdicts were against the manifest weight of the evidence, and that his sentence was contrary to law. For the following reasons, we affirm Waldron's conviction, vacate the imposed sentence, and remand for resentencing.

> {¶ 2} In 1997, twelve-year-old victim E.L. lived with his family on the near west side of Cleveland. Waldron lived in the same neighborhood as E.L. and had even taken the child to a Cavaliers game on a prior occasion. E.L. admitted that he knew Waldron was a homosexual, and further admitted that he had heard rumors that Waldron engaged in sexual activity with other boys in the neighborhood.

> {¶ 3} In November, 1997, Waldron approached E.L. and friend D.W. outside of a corner store. Waldron offered E.L. money in exchange for allowing Waldron to perform fellatio on E.L. E.L. agreed to Waldron's proposition and he and D.W. followed Waldron to his one-bedroom apartment.

> {¶ 4} Once inside the apartment, D.W. sat on a chair, E.L. sat on the bed, and Waldron sat on the floor in front of E.L. Waldron told E.L. to pull down his pants and underwear and E.L. complied, pulling his pants and underwear to his knees. Waldron proceeded to perform fellatio on E.L. while masturbating. After Waldron finished, he asked D.W. if he was next, and D.W. responded in the negative. Waldron gave D.W. five dollars and gave E.L. either forty or sixty dollars. Both boys then left the apartment.

---

[1]Mr. Waldron's 2254(d)(2) challenge, addressed in section II.D below, specifically concerns an inference drawn from the facts by the state appellate court in ¶15 of its decision.  The facts themselves, as rendered in the state appellate court decision, ¶¶ 1-9, are not in question.

The AEDPA requires heightened respect for state factual findings.  Herbert v. Billy, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. See Sumner v. Mata, 449 U.S. 539, 546 (1981); Smith v. Jago, 888 F.2d 399, 407 n. 4 (6th Cir. 1989).

4

{¶ 5} E.L. admitted that he returned to Waldron's apartment a second time in November. Once inside the apartment, Waldron told E.L., "I'll give you seventy-five dollars if you let me do it again." Waldron also told E.L. that he didn't have the money at the present time, that E.L. would have to wait until Waldron received his paycheck. E.L. agreed, and allowed Waldron to perform fellatio on him for the second time. Waldron later paid E.L. seventy-five dollars.

{¶ 6} D.W., who was not present for the second incident, stated that he observed E.L. on the street with some money, and that E.L. said he received the money from Waldron.

{¶ 7} In late November, Waldron approached B.F. and K.F., two brothers who were twelve and fourteen years of age. Waldron handed each brother a scrap of paper with his name, address, and phone number and asked each brother if they wanted to make any money. Both B.F. and K.F. testified that they recognized Waldron's name, and further stated that they had heard about the sexual encounter between Waldron and E.L. The brothers returned home and informed their grandmother about the encounter. The grandmother contacted the police, who responded to the residence. After speaking with the brothers and their grandmother, officers learned that Waldron had engaged in sexual contact with E.L.

{¶ 8} When officers first interviewed E.L about the alleged incident, E.L. initially denied any sexual contact. However, after police reinterviewed B.F., K.F, and interviewed D.W., E.L. told police about Waldron's actions. Officers then responded to Waldron's residence and placed him under arrest.

{¶ 9} A Cuyahoga County Grand Jury indicted Waldron with two counts of rape and two counts of compelling prostitution. Both rape charges contained sexually violent predator specifications and repeat violent offender specifications. The trial court severed the specifications from the main counts of the indictment and Waldron waived his right to a jury trial on those specifications. After deliberating, the jury found Waldron guilty of all four charges. The trial court then held a hearing on the specifications and found Waldron guilty of the repeat violent offender specifications and adjudged him to be a sexually violent predator. The trial court sentenced Waldron to a maximum sentence of ten years on each rape count, with an additional nine-year sentence for the repeat violent offender specification, and seven years on each count of compelling prostitution. The trial court ordered all sentences to be served consecutively.

State v. Waldron, 2005 WL 2789447, ¶¶ 1-9

**B.     State Appellate Court: Legal Determination**

{¶ 11} In his first assignment of error, Waldron argues that his trial counsel rendered ineffective assistance when he failed to object to the admission of "other acts" evidence. Specifically, Waldron argues that the testimony of B.F. and K.F. constituted impermissible "other acts" evidence that had an impact on the outcome of his trial. We disagree.

{¶ 12} In order to prevail on a claim for ineffective assistance of counsel, the defendant must show first, that counsel's performance was deficient, and second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.  Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Strickland at 687.

{¶ 13} In determining whether counsel's performance fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.

{¶ 14} The ultimate question under this assigned error is whether the testimony constituted impermissible "other acts" evidence and whether such testimony prejudiced the outcome of Waldron's trial. We find the testimony offered by B.F. and K.F. clearly admissible to establish a plan pursuant to Evid. R. 404(B). Evid. R. 404(B) permits the introduction of evidence of "other acts" to prove a plan so long as the evidence is not used merely to prove the bad character of the person and that he acted in conformity therewith.

{¶ 15} In the present case, the evidence established that in November 1997, Waldron approached E.L. and D.W. and asked them if they wanted to make money. Waldron then paid E.L. a sum of money for allowing him to perform fellatio on E.L. The evidence further established that later on

6

that month, Waldron approached B.F. and K.F. and asked them if they wanted to make some money. Both acts involved victims of the same or similar age, the same month, and the same approach. Accordingly, the "other act" and the crime committed against E.L. shared the common plan to engage in sexual contact with young boys.

{¶ 16} Waldron's argument that the State of Ohio used this evidence to prove Waldron's bad character and that he acted in conformity therewith is without merit. The portions of the trial transcript cited to by Waldron in support of this argument involved the State of Ohio's closing arguments. The transcript reflects that the trial court clearly instructed the jury that closing arguments were not evidence to be considered during deliberation. Accordingly, Waldron did not suffer prejudice.

{¶ 17} Because B.F. and K.F. testified to admissible "other acts" evidence, Waldron cannot show either that his counsel performed deficiently, or that such deficient performance prejudiced his defense, depriving him of a fair trial. Therefore, his trial counsel did not render ineffective assistance.

{¶ 18} Waldron's first assignment of error is overruled.

State v. Waldron, 2005 WL 2789447, ¶¶ 11-18.


## II.     LAW AND ANALYSIS

### A.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254 , was signed into law on 24 April 1996.  The United States Supreme Court has held that the provisions of the AEDPA apply to habeas corpus petitions filed after that effective date.  See Woodford v. Garceau, 538 U.S. 202, 210 (2003);  Barker v. Yukins, 199 F. 3d 867, 871 (6th Cir. 1999).  Mr. Waldron's petition was filed after AEDPA's effective date.

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and 'to further the principles of comity, finality, and federalism.' "  Woodford, 538 U.S. at 206 (citing Williams v. Taylor, 529 U.S.

362, 386 (2000)).  In advancing those goals, Section 2254(d) placed new constraints on

"the power of a federal habeas court to grant a state prisoner's application for a writ of

habeas corpus with respect to claims adjudicated on the merits in state court."

Williams, 529 U.S. at 412.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with
> respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the state
> court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court outlined the proper application of § 2254(d) in

Williams v. Taylor, supra. To justify a grant of habeas relief under the "contrary to"

clause, "a federal court must find a violation of law clearly established by holdings of the

Supreme Court, as opposed to its dicta, as of the time of the relevant state court

decision."  Miller v. Francis, 269 F.3d 609, 614 (6th Cir. 2001) (quoting Williams v.

Taylor, supra).   "[U]nder the 'unreasonable application' clause, a federal habeas court

may grant the writ if the state court identifies the correct governing legal principle from

[the Supreme] Court's decisions but unreasonably applies that principle to the facts of

the prisoner's case."  Williams 120 S. Ct at 1523.  The Sixth Circuit has held that, even if

a federal court could determine that a state court incorrectly applied federal law, the

court still could not grant relief unless it also finds that the state court ruling was unreasonable.  Simpson v. Jones, 238 F. 3d 399, 405 (6th Cir. 2000).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. Bailey v. Mitchell, 271 F.3d 652, 655 (citing Williams, 529 U.S. at 413); see also Bell v. Cone, 535 U.S. 685, 693-94 (2002); Lancaster v. Adams, 324 F.3d 423, 429 (6th Cir. 2003).

Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. See Harris v. Stovall, 212 F.3d 940, 943 (6th Cir. 2000); McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003).  Where the circumstances suggest that the state court actually considered the issue, the review is not de novo.  Onifer v. Tyszkiewicz, 255 F.3d 313, 316 (6th Cir. 2001).  The review remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  Harris, 212 F.3d at 943.

9

However, the Sixth Circuit has clarified that where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer."  In such circumstances, the court conducts de novo review. McKenzie, 326 F.3d at 727 (limiting Harris to those circumstances in which a result exists to which the federal court may defer); see also Wiggins v. Smith, 539 U.S. 510, 534 (2003) (reviewing habeas issue de novo where state courts had not reached the question);  Maples v. Stegall, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that Wiggins established de novo standard of review for any claim that was not addressed by the state courts).

### C.    "Contrary to" and State Court Rulings on Evidentiary Matters

In his objections to the R&R, Mr. Waldron contends the habeas writ should be granted because, in examining the Ohio Rules of Evidence, the state appellate court rendered a decision contrary to federal law.  (Doc. 12, p. 6).  Specifically, Mr. Waldron maintains the state appellate court review of the testimony by K.F. and B.F. "rendered a decision that is contrary to federal law" because the decision failed to assess the testimony in light of the strictures of Ohio Evid. R. 403, to balance probative value against the potential for unfair prejudice.  As Courts have made clear, to justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision."  Miller v. Francis, 269 F.3d 609, 614 (6th Cir. 2001) (quoting Williams v. Taylor, supra).

10

Under Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Preliminarily, a trial court has broad discretion to admit or exclude evidence, and its determination will not be reversed absent an abuse of discretion.  State v. Sage, 31 Ohio St. 3d 173, 510 N.E.2d 343 (1987).  Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  This rule codifies an exception to the common law rule that evidence of previous criminal acts wholly independent of the criminal offense for which a defendant is on trial is generally inadmissible.  State v. Wilkinson, 64 Ohio St. 2d 308, 315, 415 N.E.2d 261 (1980); State v. Broom, 40 Ohio St. 3d 277, 533 N.E.2d 682 (1988).  While evidence of other crimes, wrongs, or acts is not admissible to show the accused's propensity or inclination to commit a crime, it may be admissible for other purposes including to prove motive, intent, plan, or absence of mistake or accident.  O.R.C. 2945.59; Ohio Evid. R. 404(B).

To be admissible, "other acts" evidence must form part of the immediate background of the crime charged; that is, the evidence must play an integral part in explaining the sequence of events or the setting of the case and be necessary to give a complete picture of the crime or crimes with which the defendant is charged.  State v. Thompson, 66 Ohio St. 2d 496, 498, 422 N.E. 2d 855 (1981);  Wilkinson, at 317, 415

11

N.E. 2d 261. However, in order to be admissible, the other acts at issue must tend to

establish one of the legitimate purposes enumerated in Ohio Evid. R. 404(B).  See

Broom,  40 Ohio St. 3d 277.

In this instance, upon a de novo review of the record, the Court finds that the

testimony of B.F. and K.F. falls within the ambit of Rule 404(B) as both an indication of

Petitioner's plan and as part of the setting of the case.  (Tr. 286-305).  In reviewing the

evidence, the state appellate court properly acknowledged the clear admissibility of the

testimony (State v. Waldron, 2005 WL 2789447, ¶14) and, further, properly concluded

that, in light of the overwhelming evidence against Mr. Waldron, no prejudice occurred

in allowing such admissibility.  (State v. Waldron, 2005 WL 2789447, ¶16).

Further, even if the Court regarded this as an evidentiary error by the state

appellate court, it is well-established that evidentiary errors, including those that rise to

the level of constitutional violations, will be deemed harmless where the remaining

untainted evidence provides overwhelming proof of the defendant's guilt.  State v.

Williams, 6 Ohio St.3d 281, 290 (1983); State v. Hurt , 1996 WL 145486 (Ohio App.

10th 1996).[2]  In this case, even if the Court determined that admissibility of the testimony

---

[2]Federal habeas review of state court evidentiary rulings is extremely limited.
Waters v. Kassulke, 916 F.2d 329, 335 (6th Cir. 1990).  Evidentiary questions
generally do not rise to a constitutional level unless the error was so prejudicial as
to deprive a defendant of a fundamentally fair trial, thereby violating due process.
Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir.1988); see also Walker v. Engle, 703
F.2d 959, 962 (6th Cir. 1983).  When such errors are alleged, the federal court's
inquiry in reviewing these claims is directed to whether the evidence was rationally
connected to the crime charged.  Carter v. Jago, 637 F.2d 449, 457 (6th Cir. 1980).
In this instance, the Court does not find that the state appellate court's failure to
balance consideration of the "other acts" testimony of B.F. and K.F. pursuant to
Rule 403 has risen to a constitutional level.

of B.F. and K.F. was in error, nevertheless, the remaining evidence by the victim E.L,

the first-hand witness, D.W. and the investigating officers, provided overwhelming proof

from which the jury could render a reasonable determination concerning the defendant's

guilt

Finally, the Court observes that the extraordinary remedy of habeas corpus lies

only for a violation of the federal Constitution or laws.  28 U.S.C. § 2254(a).  As the

Supreme Court explained in Estelle v. McGuire, 502 U.S. 62 (1991), an inquiry whether

evidence was properly admitted or improperly excluded under state law "is no part of

the federal court's habeas review of a state conviction [for] it is not the province of a

federal habeas court to re-examine state-court determinations on state-law questions."

Id. at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United

States."  Id. at 68.  State-court evidentiary rulings cannot rise to the level of

constitutional violations unless they "offend some principle of justice so rooted in the

traditions and conscience of our people as to be ranked as fundamental."  Seymour v.

Walker, 224 F.3d 542, 552 (6th Cir. 2000); accord Bey v. Bagley, 500 F.3d 514, 519 (6th

Cir. 2007); Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords

the state courts wide latitude in ruling on evidentiary matters.  Bey, 500 F.3d at 521;

Seymour, 224 F.3d at 552.  Further, under the AEDPA, the court may only grant relief if

a petitioner is able to show that the state court's evidentiary ruling was in conflict with a

decision reached by the Supreme Court on a question of law or if the state court

decided the evidentiary issue differently than the Supreme Court did on a set of

13

materially indistinguishable facts.  <u>Bey</u>, 500 F.3d at 521-22;  <u>Sanders v. Freeman</u>, 221

F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard.


     **B.**    **"Unreasonable Application" of <u>Strickland v. Washington</u>**

     Mr. Waldron, next, contends that his counsel's failure to object to the introduction

of the alleged inadmissible "other acts" testimony of K.F. and B.F. amounted to

ineffective assistance of counsel under <u>Strickland</u> and the state appellate court did not

reasonably apply that benchmark case.  Because this claim requires the Court to review

– on its way to a determination of whether counsel was ineffective – the boundaries of

the law of evidence in the state of Ohio, as it relates to Ohio Evid. R. 404(B),[3] the

_____

    [3]As the R&R explains, however,

> [t]he issue in Ohio is actually more complex because in rape cases,
> such as Waldron's, a trilogy of rules applies beginning with the state
> statute governing proof of motive, the states version of Evid. R.
> 404(B), and the state's rape shield statue.  <u>See</u> <u>Pennington v.</u>
> <u>Lazaroff</u>, 13 Fed. Appx. 228 (6th Cir. Apr. 3, 2001); <u>State v. Cotton</u>,
> 113 Ohio App. 3d 125, 131 680 N.E. 2d 657, 661 (Ohio App. 1 Dist.,
> 1966).

(Doc. 11, R&R, p. 8).

    Ohio's statute involving proof of defendant's motive, O.R.C. § 2945.59 reads
as follows:

> In any criminal case in which the defendant's motive or intent, the
> absence of mistake or accident on his part, or the defendant's
> scheme, plan, or system in doing an act is material, any acts of the
> defendant which tend to show his motive or intent, the absence of
> mistake or accident on his part, or the defendant's scheme, plan, or
> system in doing the act in question may be proved, whether they are
> contemporaneous with or prior or subsequent thereto, notwithstanding
> that such proof may show or tend to show the commission of another
> crime by the defendant.

Petitioner is, in effect, seeking to avoid an avenue already significantly narrowed by

decisions in the Sixth Circuit.  Namely, that because the Supreme Court has not

specifically spoken on the issue, federal habeas courts cannot find that state court

rulings allowing propensity use of "other acts" evidence are contrary to, or involve an

objectively unreasonable application of, clearly established federal law.  <u>Bugh v.</u>

––––––––––––––––––––

Ohio's Evid. Rule 404(B), regulating other crimes, wrongs or acts, directs that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove
> the character of a person in order to show that he acted in conformity
> therewith.  It may, however, be admissible for other purposes, such as
> proof of motive, opportunity, intent, preparation, plan, knowledge,
> identity or absence of mistake or accident.

Ohio's Rape Shield Statute, O.R.C. § 2907.02 (D), discusses the balancing of
prohibitions as follows:

> Evidence of specific instances of the victim's sexual activity, opinion
> evidence of the victim's sexual activity, and reputation evidence of the
> victim's sexual activity shall not be admitted under this section unless
> it involves evidence of the origin of semen, pregnancy, or disease, or
> the victim's past sexual activity with the offender, and only to the
> extent that the court finds that the evidence is material to a fact at
> issue in the case and that its inflammatory or prejudicial nature does
> not outweigh its probative value.

> Evidence of specific instances of the defendant's sexual activity,
> opinion evidence of the defendant's sexual activity, and reputation
> evidence of the defendant's sexual activity shall not be admitted under
> this section unless it involves evidence of the origin of semen,
> pregnancy, or disease, the defendant's past sexual activity with the
> victim, or is admissible against the defendant under section 2945.59 of
> the Revised Code, and only to the extent that the court finds that the
> evidence is material to a fact at issue in the case and that its
> inflammatory or prejudicial nature does not outweigh its probative
> value.

Mitchell, 329 F.3d 496, 512 (6th Cir. 2003). See also, Paige v. Bradshaw, 2007 WL

4323785, *12 (N.D. Ohio Apr. 4, 2007) (applying Bugh to reject prior bad acts claim).[4]

What the Court is asked to review, instead, is whether Mr. Waldron's counsel's

performance, with regard to the "other acts" testimony, was ineffective pursuant to the

standard laid down in Strickland v. Washington, 466 U.S. 668 (1984).  In order to gauge

that performance, the Court must, first, inquire into the form and limits of Ohio Evid.

Rule 404(B).  Ohio courts limit the use of other acts evidence because, as the court in

State v. Barnes observed, "there is a substantial danger that a jury will convict the

defendant simply because it assumes that the defendant has a propensity to commit

criminal acts, or deserves punishment even if he did not commit the crimes charged in

the indictment."  State v. Barnes, 149 Ohio Misc.2d 1, 896 N.E.2d 1033 (Ohio Com. Pl.

2008), ¶11.  Further, in indictments involving alleged crimes of sexual assault and child

molestation, the state courts seek to winnow out "other acts" evidence connected to the

defendant only by "unsubstantiated innuendo," because such evidence "poses a higher

_____

[4]    The R&R also observes that Mr. Waldron's challenge before the state
appellate court was predicated entirely upon Ohio Evid. R. 404(B).  (Doc. 12, p. 9).
A review of the record substantiates that observation.  The admission of the similar
acts testimony pursuant to the Ohio Rules of Evidence violated no traditional and
fundamental principle of justice.  The United States Supreme Court has declined to
hold that the admission of similar "other bad acts" evidence is so unfair that it
violates fundamental concepts of justice.  See Dowling v. United States, 493 U.S.
342, 352-53(1990).  Although the Supreme Court has addressed whether prior acts
testimony is permissible under the Federal Rules of Evidence, see Huddleston v.
United States, 485 U.S. 681 (1988), it has not explicitly addressed the issue in
constitutional terms.  Thus, "[t]here is no clearly established Supreme Court
precedent which holds that a state violates due process by permitting propensity
evidence in the form of other bad acts evidence." Bugh, 329 F.3d at 512; see Bey,
500 F.3d at 520.  Accordingly, the state-court's decision to admit the similar acts
testimony was neither contrary to nor an unreasonable application of Supreme
Court precedent.

16

risk, on the whole, of influencing the jury to punish the defendant for the similar act rather than the charged act."  State v. Miley, 2006 WL 2589816 (Ohio App. 2006) ¶ 59. Evidence of "other acts" is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  State v. Broom, 40 Ohio St.3d at 282-283, 533 N.E.2d at 690-691. Further, the "other acts" must not be too remote and must be closely related in nature, time, and place to the offense charged.  State v. Miley, at ¶61.

The Ohio Supreme Court recognizes that "[o]ther acts may also prove identity by establishing a *modus operandi* applicable to the crime with which a defendant is charged."  State v. Lowe, 69 Ohio St.3d 527, 531 (1994).  "'Other acts' may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense."  State v. Smith, 49 Ohio St. 3d 137, 141, 551 N.E.2d 190, 194 (1990).  The court in Lowe recognized such "other acts" evidence as providing a "behavioral fingerprint" admissible to show the characteristics of acts rather than a person's character.  State v. Lowe, at 531.

In this instance, B.F. and K.F., then both younger than 13 years of age, testified to having been approached by the Petitioner in a nearby park on 27 November 1997. (Tr. 286-305).  Mr. Waldron asked both B.F. and K.F. whether they wanted to "make some money" and handed them each a torn check face which contained his address and phone number.  B.F. and K.F. testified to reporting the encounter to their grandmother.  Testimony evidence from the victim, E.L. indicated that, while he had

17

other previous non-sexual encounters with Mr. Waldron, he was, nevertheless, approached in similar fashion, asked if he wanted to "make some money," and was subsequently paid by the Petitioner on 15 November and 20 November 1997, for receiving oral sex.  (Tr. 199, 218).  The Court finds the initial encounters were closely related in nature, time and place and were indicative of the Petitioner's "behavioral fingerprint."  Further, the Court find, upon consideration of the evidence, that the nature of this case does not merit the concerns given voice in State v. Barnes, supra, and State v. Miley, supra, that the probative quality of the "other acts" evidence would be outweighed by the prejudicial effect of its introduction.  The testimony of B.F. and K.F. was not "unsubstantiated innuendo" and the jury heard directly, and at length, from the victim E.L. and the first-hand witness, D.W. concerning Mr. Waldron's alleged conduct.

Having reviewed the reach and effect of "other acts" evidence pursuant to Ohio Evid. Rule 404(B), the Court now turns to a consideration of whether Mr. Waldron's failure to object to the "other acts" testimony amounted to ineffective assistance of counsel.  In Strickland v. Washington, the Supreme Court held that the benchmark for judging any claim of ineffectiveness of counsel was whether the conduct of counsel undermined the proper functioning of the adversarial process to the point that the trial could not be relied on as having produced a just result.  Strickland v. Washington, 466 U.S. at 686.  To test whether counsel was ineffective, the Court then created a two factor analysis.  First, the defendant must show deficient performance to the level that counsel was no longer functioning as the "counsel" guaranteed by the Sixth Amendment.  Id. at 687.  Second, the defendant must show that this deficient performance prejudiced the defense to the point of depriving defendant of a fair trial.  Id.

18

"To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.' " Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688).  A petitioner must point to specific errors in counsel's performance.  United States v. Cronic, 466 U.S. 648, 666 (1984).  Thereafter, a reviewing court must subject the allegations to rigorous scrutiny, determining "whether, in light of all circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  A reviewing court must strongly presume counsel's conduct was reasonable and might be part of a trial strategy.  Id. at 689.  "'Judicial scrutiny of a counsel's performance must be highly deferential' " and ... 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' "  Cone v. Bell, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689).

To ascertain whether counsel's performance prejudiced a criminal proceeding, a reviewing court does not speculate whether a different strategy might have been more successful, but a court must "focus[ ] on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).  The Court now reviews Mr. Waldron's "unreasonable application" claim pursuant to this standard.

Mr. Waldron does not demonstrate that the Ohio appellate court applied Strickland unreasonably with regard to either the deficiency or the prejudice element of the Supreme Court's standard.  As the state appellate court noted, the "other acts" testimony by B.F. and K.F. were "clearly admissible to establish a plan pursuant to"

19

Rule 404(B).  (¶¶ 12-17).  The evidence properly substantiated the observation of the state appellate court that B.F. and K.F. were approached by the Petitioner within days of his similar solicitation of the victim E.L., that B.F. and K.F. were of similar age, and that Mr. Waldron inquired of each of the boys whether they wanted to "make some money." In light of the parallel conditions of behavior by Mr. Waldron, his counsel's failure to object to the testimony of B.F. and K.F. on "other acts" grounds does not rise to the level of a constitutional deficiency.  Further, it is clear from the trial evidence that Petitioner's counsel did raise objections to the introduction of evidence that was, in his estimation, more probative than prejudicial, as he did successfully in the face of the state's efforts to introduce Mr. Waldron's letter to E.L.'s mother during her testimony. (Tr. 252).  Finally, as the evidence indicates, testimony by B.F. and K.F., was inextricably linked to the police officers' initial approach of E.L and D.W. and the location and apprehension of Mr. Waldron.

As did the Magistrate Judge in his R&R, this Court performed an independent review of the record in light of the state appellate court's mere conclusion that Mr. Waldron was not prejudiced, under Strickland, by his counsel's failure to object to the "other acts" testimony.  The state appellate court reached that conclusion without rendering an explanation.  Maldonado v. Wilson, 416 F.3d 470, 476 (6th Cir. 2005), cert denied, 546 U.S. 1101 (2006).  Upon review, the Court finds that the state appellate court did not unreasonably conclude that Mr. Waldron's counsel's performance did not prejudice the criminal proceedings so seriously as to deprive the defendant of a fair trial, a trial whose result is reliable.  See  Lockhart v. Fretwell, 506 U.S. at 372.

The evidence presented at trial strongly supported the indictment's allegations. Jury members heard detailed testimony from the victim, E.L., and corroborative testimony from D.W.[5] who accompanied E.L. to Mr. Waldron's apartment for the first, paid sexual encounter.  The jury also heard supporting testimony from the investigative officers.  Testimony by K.F. and B.F. was limited to their brief encounter with the Petitioner in a nearby neighborhood park.  The brothers testified that in that encounter Mr. Waldron asked them if they wanted to "make some money" and then handed to each a torn check corner with his address and telephone number. They further testified of their decision to tell their grandmother of the encounter, and of their recognition of Mr. Waldron from the stories they had heard from E.L.  (Tr. 286-305).  While the defense presented no witnesses, Mr. Waldron's counsel sought, through cross-examination and opening and closing arguments, to portray his client as the victim of "street-wise" boys out to exploit his client's weaknesses.  The jury was persuaded otherwise.  That the state appellate court found no Strickland prejudice in the Petitioner's counsel's performance does not amount, in this instance, to an objectively unreasonable application of the Strickland standard.

---

[5]The Petitioner suggests that because first-hand witness D.W. also "made money" by, on one occasion, washing Mr. Waldron's dishes,  no illicit plan or pattern existed in Mr. Waldron's initial approach toward these young boys.  A review of the testimonial evidence significantly undermines the Petitioner's argument.  As D.W. indicated, in the first sexual encounter with E.L. which D.W. witnessed, Mr. Waldron fully expected to also engage in such an encounter with D.W.  That this did not occur and that D.W. later made himself available on his own to do the Petitioner's dishes does not undermine the clear plan and pattern of Mr. Waldron's conduct.

**D.     § 2254(d)(2) Unreasonable Determination of the Facts**

In his Traverse, Mr. Waldron invokes an entirely new claim in support of his

habeas petition, relying upon 28 U.S.C. 2254(d)(2).  This is the first instance in which

the Petitioner has argued that the state court's decision was based on an unreasonable

determination of the facts in light of the evidence presented.

A federal court may grant habeas relief if the state court's decision was "based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceedings." 28 U.S.C. § 2254(d)(2).  "[W]here the state courts plainly

misapprehend or misstate the record in making their findings, and the misapprehension

goes to a material factual issue that is central to petitioner's claim, that misapprehension

can fatally undermine the fact-finding process, rendering the resulting factual finding

unreasonable."  Taylor, 366 F.3d at 1001 (citing Wiggins, 539 U.S. 510, 527-28 (2003)).

"[A] factual finding (or assumption) which lacks any record support, which is

contradicted by evidence in the record, and which is shown to be factually wrong by

information which is readily accessible and unquestionably accurate is an objectively

unreasonable determination of the facts under 2254(d)(2)."  Fargo v. Phillips, 129 F.

Supp.2d 1075 (E.D. Mich. 2001), overturned on other grounds, 58 Fed. App'x 603 (6th

Cir. 2003).  With respect to § 2254(d)(2), "[f]actual determinations by state courts are

presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1),

and a decision adjudicated on the merits in a state court and based on a factual

determination will not be overturned on factual grounds unless objectively unreasonable

in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell,

537 U.S. 322, 340 (2003).

There is some evidence that the Petitioner's 2254(d)(2) claim, as a new allegation, may be time barred.  Considering that Mr. Waldron's petition for habeas corpus was filed on 27 June 2007, precisely 1 year and 90 days after the Ohio Supreme Court entered its denial for leave to appeal, Case No. 103-385, on 29 March 2005 (Doc. 8, Exhibit 24), this Court may deny his new claim as barred by the statute of limitations. See Travis v. Jones, 2007 WL 80881 (W.D. Mich., 8 January 2007).

However, in an abundance of caution, the Court will consider Mr. Waldron's 2254(d)(2) claim on its merits.  Mr. Waldron points to ¶15 of the state appellate court's "other acts" analysis to allege that the decision made an erroneous determination of the facts in light of the evidence.  In ¶15, the state appellate court found enduring parallels between the behavior the Petitioner exhibited toward the testifying victim E.L, the witness D.W. and the two boys, B.F. and K.F. who were approached by Mr. Waldron and who, by subsequently reporting that approach to their grandmother, began the police investigation that led to Mr. Waldron's questioning and arrest.  The state appellate court found no improper introduction of "other acts" evidence in the testimony of K.F. and B.F. because Mr. Waldron's later approach paralleled his earlier approach of E.L. and D.W. and "involved victims of the same or similar age, the same month, and the same approach."

Having already established the propriety of the "other acts" testimony as evidence of the Petitioner's common plan, scheme or system, *in approaching* the young boys testifying, the state appellate court then unfairly extended its analysis, in light of the evidence, noting that the approach "shared the common plan to engage in sexual contact with young boys."  (¶ 15).  While the Petitioner's approaches toward K.F. and

23

B.F. did parallel his approach to E.L., the evidence supports the indication that Mr. Waldron took the further step to invite E.L. over to his apartment to engage in a sexual encounter, while the evidence does not support that indication with regard to the Petitioner's encounter with B.F. and K.F.  The testimony evidence from E.L., B.F., K.F., and Officer Zagoria, indicated that within days of Mr. Waldron's solicitation of E.L., asking him whether he "wanted to make some money" which culminated in a sexual encounter with E.L., a boy under the age of 13, the Petitioner then approached B.F. and K.F. asking the brothers, both below the age of 13, whether they "wanted to make some money."  (Tr. 199, 218, 290, 299).  From the transcript, it is clear that the jury heard evidence of this parallel approach from the victim, E.L., from the victim's companion, D.W., who was also sexually solicited by Mr. Waldron (Tr. 260), and from B.F. and K.F. Recognition of this parallel approach by Mr. Waldron led B.F. and K.F. to report the terms of the encounter to family members and, subsequently, to the police.  (Tr. 303, Tr. 309, 310, 312 (testimony of Cleveland Police Officer Paul Zagaria following testimony of B.F. and K.F.).

        In this instance, the Court construes the state appellate court's misstatement of the evidence as harmless error as lacking "substantial and injurious effect or influence in determining" the state appellate court's conclusion regarding the propriety of the "other acts" testimony.  See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (setting forth the standard that a constitutional error provides a basis for habeas relief only if it had a "substantial and injurious effect or influence in determining the jury's verdict." quoting Kotteakos v. United States, 328 U.S. 750 (1946)); see also Stewart v. Erwin, 503 F.3d 488 (6th Cir. 2007);  Woodall v. Simpson, 2009 WL 464939 (W.D. Ky. 24

24

February 2009).  First, the state appellate court's prior analysis, up to the offending sentence, properly invokes the evidence to find that the "other acts" testimony was properly introduced to show a common plan or scheme in the Petitioner's approach to the young boys.  Second, the state appellate court properly indicated that it was under the very terms of Mr. Waldron's parallel approach of brothers K.F. and B.F. that the brothers recognized the Petitioner as the individual who approached E.L., the victim in the charge.  Finally, the narrative arc of the evidence, as properly represented by the state appellate court, indicates that the testimony of K.F. and B.F. was integral to understanding the pursuit and apprehension of the Petitioner.

Accordingly, the Court does not find that Mr. Waldron is entitled to relief under § 2254(d)(2).  In light of the totality of the evidence presented, the Court does not find that the state appellate court's final characterization of Mr. Waldron's common plan renders it constitutionally infirm, as it did not have a  "substantial and injurious effect or influence in determining"  that court's conclusion regarding the propriety of the "other acts" testimony or the effectiveness of Mr. Waldron's counsel.


### III.    CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability.  Murphy v. Ohio. 263 F.3d 466, 467 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  Id. at 467.  Each issue must be considered under the

25

standards set forth by the Supreme Court in <u>Slack v. McDaniel</u>, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). <u>Murphy</u>, 263 F.3d at 467.  Consequently, this Court examines petitioner's claims pursuant to the <u>Slack</u> standard.

Under <u>Slack</u>, 529 U.S. at 484, 120 S.Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  For the foregoing reasons, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claim was debatable or wrong.  Thus, the Court will deny Petitioner a certificate of appealability.

Mr. Waldron presented a single ground for relief in his habeas petition.  Upon <u>de novo</u> review, pursuant to Mr. Waldron's objections to the Magistrate Judge's R&R, the Court denied the petition after finding that the state court determinations were not objectively unreasonable nor contrary to clearly established Federal law.  Nor did the Court find that the state appellate court's determination of the facts create a constitutional question.

Upon review pursuant to <u>Slack</u>, the Court further concludes that Mr. Waldron has not established that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong.  Accordingly, pursuant to the standard laid down in <u>Slack</u> this Court denies a COA for Mr. Waldron's habeas claims.

**IV.     CONCLUSION**

The Court has performed a <u>de novo</u> review of the record and affirms the Magistrate Judge's Report and Recommendation as it pertains to the allegation of

"unreasonable application" pursuant to § 2254(d)(1).  The Court reaches beyond the R&R to deny the petition's claim that the state appellate court's decision was contrary to decisions of the Supreme Court of the United States and to, further, deny the petitioner's claim that the state appellate court's decision was based on an unreasonable determination of the facts, pursuant to § 2254(d)(2).  This matter is dismissed in its entirety without a Certificate of Appealability.

       IT IS SO ORDERED.

                                        /s/Lesley Wells
                                     UNITED STATES DISTRICT JUDGE

Date: 14 May 2009

27